IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION

**MICHAEL GLEN BURNS**                                                                **PLAINTIFF**

**V.**                              **NO. 2:16CV00159 JM/PSH**

**NANCY A. BERRYHILL,**[1]
**Acting Commissioner,**
**Social Security Administration**                                      **DEFENDANT**

## RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge James M. Moody, Jr. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objections; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

### I. Introduction:

Plaintiff, Michael Glen Burns, applied for disability insurance benefits and supplemental security income benefits on August 23, 2013, alleging a disability onset date of October 29, 2013. (Tr. at 9). After conducting a hearing, the Administrative Law Judge ("ALJ") denied his application. (Tr. at 20). The Appeals Council denied his request for review. (Tr. at 1). Thereafter, Burns appealed his claim to this Court. (Tr. at 427, 493). This Court remanded the case to the Commissioner for further proceedings on July 1, 2015. (Tr. at 493-496). The Appeals Council subsequently remanded the case to an ALJ for another hearing for further consideration of the

---

[1] Berryhill is now the Acting Commissioner of Social Security and is automatically substituted as Defendant pursuant to Fed. R. Civ. P. 25(d).

evidence and of Mr. Burns's residual functional capacity ("RFC"), as well as further development of vocational evidence through a properly phrased hypothetical. (Tr. at 497-498).

After conducting a second hearing on May 25, 2016, the ALJ denied Mr. Burns' application. (Tr. at 436). The Appeals Council denied his request for review. (Tr. at 416-423). The ALJ's decision now stands as the final decision of the Commissioner. Mr. Burns has requested judicial review.

For the reasons stated below, this Court should reverse the ALJ's decision and remand for further review.

## II. **The Commissioner's Decision:**

The ALJ found that Mr. Burns had not engaged in substantial gainful activity since the alleged onset date of October 26, 2009. (Tr. at 429). At Step Two, the ALJ found that Mr. Burns has the following severe impairments: osteoarthritis in the left ankle, bursitis, and degenerative disc disease. *Id.*

After finding that Mr. Burns' impairment did not meet or equal a listed impairment (Tr. at 430), the ALJ determined that Mr. Burns had the residual functional capacity ("RFC") to perform the full range of light work, except that: (1) he could only occasionally balance, stoop, kneel, crouch, crawl, and climb; (2) he could only occasionally push and pull with his dominant upper extremity (right); and (3) he could not perform work around hazards. (Tr. at 430).

The ALJ determined that Mr. Burns was not capable of performing any past relevant work. (Tr. at 434). Relying upon the testimony of the Vocational Expert ("VE") at Step Five, the ALJ found that, based on Burns' age, education, work experience, and RFC, jobs existed in the national economy which he could perform, specifically tanning salon attendant and caller. (Tr. at 435). Consequently, the ALJ found that Burns was not disabled. (Tr. at 436).

**III. Discussion:**

    A.  Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d at 477.

    B.  Burns' Arguments on Appeal

Burns argues that substantial evidence does not support the ALJ's decision to deny benefits. He contends that the ALJ erred in his RFC determination and that the hypothetical posed to the VE did not incorporate all of Burns' impairments. For the following reasons, the Court agrees with Burns.

In 2009, Burns injured his left ankle when he jumped off a tractor. (Tr. at 285). On October 26, 2009, Burns saw Dr. Sudesh Banaji, M.D., at Internal Medicine of Forrest City. (Tr. at 327). Ankle movements were grossly painful, particularly on inversion. *Id*. Dr. Banaji diagnosed left ankle sprain, with "possibly a lot of ligament damage." *Id*. He told Burns to avoid excessive walking and to wear a walking boot. *Id*. He gave him Vicoprofen for pain. *Id*.

On November 12, 2010, Burns saw Dr. Banaji again with swelling and pain of the left ankle. (Tr. at 326). Dr. Banaji prescribed Ultram for pain. *Id*. On November, 17, 2010, Burns saw orthopedist Khosrow Mateki, M.D., for chronic pain and swelling, and he was prescribed a walking boot which he wore for 4 weeks. *Id*. The boot did not offer much relief and his foot swelled and hurt at the end of the day. *Id*. Dr. Mateki recommended an MRI of the left ankle. *Id*.

On June 13, 2011, Burns returned to Dr. Banaji with mood swings and difficulty controlling his anger. (Tr. at 324). He was fighting with other people. *Id*. Dr. Banaki prescribed Celexa for mood swings and Klonopin for anxiety and panic attacks. *Id*. For continued ankle pain, Dr. Banaji prescribed Relafen. *Id*. Dr. Banaji scheduled Burns for an MRI of the left ankle. *Id*.

On June 15, 2012, Burns saw Dr. Arsen Manugian, M.D., at Memphis Orthopedic Group for the first time, with complaints of right elbow pain and chronic left ankle pain.[2] (Tr. at 298). His elbow was swollen and tender, as was his ankle. (Tr. at 299). X-rays were negative of both the elbow and the ankle. *Id*. Burns's medication history included Clonazepam, Tramadol, and Omeprazole. (Tr. at 298). Dr. Manugian ordered an orthotic for the left ankle. (Tr. at 300).

A June 22, 2012 MRI of the left ankle revealed:

> 1. Chronic partial tear of the anterior talofibular ligament, with adjacent scarring just inferior to the ligament. No acute edema in this region.

---

[2] The ALJ did not reference treatment by Dr. Manugian.

4

> Fibrosis in this area may predispose the patient to anterolateral impingement.
> 2. Mild tibiotalar and talonavicular osteoarthritis, with thinning of articular cartilage.
> 3. Mild posterior tibial tenosynovitis.

(Tr. at 297). Dr. Manugian suggested injections and possible arthroscopic surgery, since Burns had been symptomatic for over 3 years. (Tr. at 343).

At a July 5, 2012 visit, Dr. Manugian found minimal facet sclerosis in the lumbar spine with curvature to the right, tenderness, and pain upon straight-leg raise. (Tr. at 340). He also diagnosed bursitis of the right elbow and chronic ankle pain. *Id*. Dr. Manugian drained and injected the bursa joint, prescribed Naproxen for pain, and suggested that an orthopedic specialist look at the left ankle. *Id.* On August 1, 2012, Dr. Manugian noticed swelling, tenderness, and discomfort in the left ankle, and Burns said he was treating with ice and an ankle splint. (Tr. at 337). Dr. Manugian injected the left ankle with Marcaine and Kenalog. (Tr. at 290). He again drained and injected the bursa joint. *Id*.

On September 16, 2013, Burns saw Dr. Manugian again, complaining of pain and swelling, saying that the injections in the left ankle did not work. (Tr. at 349). He said he was taking Hydrocodone for pain. *Id*. Clinical testing show decreased range of motion in the left ankle, and an antalgic gait. (Tr. at 350). He could not walk on his toes. *Id*. Diagnosis was chronic ankle pain. *Id.* Dr. Manugian said the only treatment option would be arthroscopic evaluation. (Tr. at 351). On September 19, 2013, Dr. John Lochemes, M.D., of Memphis Orthopedic Group, found ankle swelling and pain, with torn ligaments and osteoarthritis. (Tr. at 361). On September 27, 2013, Dr. Lochemes performed an extensive debridement and open Brostrom procedure on the left ankle. (Tr. at 360). Burns wore a splint post-surgery and seemed to be improving. (Tr. at 365, 388).

5

On December 9, 2013, Dr. Banaji saw Burns again and found tenderness and abnormal motion in the left ankle. (Tr. at 379-381). He noted that Burns was taking Xanax, Klonopin and Lortab. *Id*. He needed a refill on the Lortab. (Tr. at 379). On March 5, 2014, Burns told Dr. Banaji that his ankle pain was persistent and the surgery had not helped. (Tr. at 393). He was only able to walk for short distances. *Id*. Dr. Banaji prescribed Norco for pain. (Tr. at 395).

On August 8, 2013, Burns saw Dr. Banaji again with bilateral leg, back, and ankle pain. (Tr. at 666). An ankle exam was abnormal with pain elicited by motion. (Tr. at 667). He noted problems with walking after "failed surgery for ligament repairs twice." (Tr. at 666). Dr. Banaji stated that Burns had "limited capacity to walk and stand and do any meaningful work related activity. He has seen a chiropractor recently, [who found] grossly abnormal lumbar spine x-rays." *Id*. Burns was taking Norco and Klonopin. *Id*.

Dr. Banaji completed a medical source statement on August 8, 2014. (Tr. at 585, 586). Therein, he stated that Burns could stand, walk, or sit continuously for only 30 minutes in an 8-hour workday. (Tr. at 585). He said he was limited in pushing, pulling, walking, and lifting. *Id.* He said he could never climb, and was limited in reaching, handling, and fingering. (Tr. at 586). Dr. Banaji explained that Burns' right arm swelled and became numb when he used it, and he experienced unbearable pain in his left ankle while walking. *Id*. The assessment was from 2009 to "indefinite." *Id*. Dr. Banaji said he relied upon MRI, x-rays, and examinations performed by physicians to support his report. *Id*.

On August 14, 2014, Dr. Lance Audirsch, D.C., began chiropractic treatment for Burns' lumbar spine. (Tr. at 593). He found limited range of motion, subluxation, and a pain response upon palpation. *Id*. Dr. Audirsch noted severe pain 75% of the day, disturbed sleep, trouble with

6

personal care, and increased pain with all walking and standing. *Id.* He stated Burns could do a few recreational activities but could not work. *Id.*

Dr. Bunaji saw Burns four times from October 2014 to March 2015, treating him for chronic pain, which rendered him unable to stand for more than a few minutes. (Tr. at 642, 660, 662, 664). He noted that Burns had seen more than one orthopedist for the condition. (Tr. at 660). He said Burns needed a handicap sticker. *Id*.

On April 15, 2015, Burns saw Dr. Ron Schechter, M.D. at NEA Baptist Clinic. (Tr. at 597).[3] Dr. Schechter noted a long history of ankle pain with virtually no relief from injections, pain medications, stretching, orthotics, modification in activities, or surgery. *Id*. Burns was taking Citalopram, Clonazepam, and Hydrocodone at the time. (Tr. at 598). Dr. Schechter offered to do another debridement but also recommended an ankle fusion surgery if the pain did not subside. (Tr. at 600). Dr. Schechter added that Burns was a "very legitimate gentleman with a real problem," and he recommended that Burns see another foot and ankle specialist. *Id*. While Burns did not typically experience relief from injections, Dr. Schechter injected the ankle on April 17, 2015 and recommended that course of treatment every three months. (Tr. at 602).

A July 27, 2015 MRI of the left ankle, ordered by Dr. Schechter, revealed tendinitis and a partial thickness tear, with a small joint effusion. (Tr. at 606). The MRI also showed a partial thickness tear of the talofibular ligament and calcaneofibular ligament, with fluid between the tibia and fibular suggesting disruption of the membrane. *Id*.

Burns saw Dr. Banaji five times between July 2015 and April 2016, for "unrelenting" (Tr. at 656) left ankle pain. (Tr. at 646-657). He noted that walking increased pain. (Tr. at 647). Dr.

---

[3] The ALJ did not reference treatment by Dr. Schechter.

Banaji continued Burns on Norco. *Id.*

Dr. Banaji completed a medical source statement again on May 19, 2016. (Tr. at 752). He diagnosed multiple tears of the left ankle tendons and ligaments with chronic pain. *Id.* His prognosis was "guarded with chronic symptoms anticipated." *Id.* Dr. Banaji said Burns was unable to work, and that his impairment would last over 12 months. *Id.* He said he would have problems with range of motion in his arm, sitting, standing, and shifting positions, stooping or bending, balance, and walking without an assistive device. *Id.* Dr. Banaji stated that Burns would miss more than 3 days of work per month. *Id.*

There is no record of a state-agency physical consultative examination. Non-examining doctors last evaluated Burns on February 24, 2014 and April 3, 2014. (Tr. at 80, 94). They both opined that Burns could expect full recovery from his ankle condition by September 2014.[4]

The ALJ's RFC for light work with some postural limitations did not incorporate Burns' unrelenting, chronic ankle pain, which was not relieved by treatment.[5] A claimant's RFC represents the most he can do despite the combined effects of all of his credible limitations and must be based on all credible evidence. *McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011). In determining the claimant's [RFC], the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of [his] impairments. *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996). The ALJ did not fully credit Burns' chronic left ankle condition.

---

[4] In total, Burns's left ankle symptoms persisted for over 7 years, which undermines the state agency doctors' assertion that the condition was not likely to last more than 12 months.

[5] The controlling regulation defines light work as requiring the ability to lift no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds, a good deal of walking or standing, and involving some pushing and pulling of arm or leg controls when sitting most of the time. 20 C.F.R. § 404.1567.

Burns saw multiple specialists for his ankle, underwent a variety of treatments, and took various strong narcotics over 7 years, with little improvement in his condition. His treating physician, Dr. Banaji, saw him over a 6-year period and completed two medical source statements that were supported by MRI, x-rays, and clinical examinations. Dr. Banaji was specific in the limitations in walking, standing, and sitting, and his notes document Burns' compliance with treatment, contrary to the ALJ's assertions otherwise. A treating physician's opinion should be granted controlling weight if it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. *Miller,* 784 F.3d at 477. For some reason, the ALJ gave little or no weight to both Dr. Banaji's 2014 and 2016 medical source statements, even though there were no contradictory medical opinions from treating sources. And the ALJ failed to obtain a consultative examination, even after the Appeals Council directed him to further develop and review the evidence. More than one doctor said Burns could not engage in work activity, and no doctor indicated that Burns was exaggerating or malingering.

The ALJ explained his decision to deny benefits by saying that Burns' activities of daily living undermined his subjective complaints of pain and rendered him less than credible. Indeed, Burns said he could do some cooking and laundry and personal care, but he needed help with those things. (Tr. at 46, 47, 253, 447-455). He said he could drive himself, but he only went to doctors' appointments. (Tr. at 46). Burns did not engage in any social activities. (Tr. at 255). He did say he liked to hunt with his father, but walking still caused pain. (Tr. at 255, 455). The ability to do some activities of daily living does not mean a claimant can perform full-time competitive work. *Hogg v. Shalala*, 45 F.3d 276, 278 (8th Cir. 1995). *See Draper v. Barnhart*, 425 F.3d 1127, 1131 (8th

Cir. 2005)("the fact that Draper tries to maintain her home and does her best to engage in ordinary life activities is not consistent with her complaints of pain, and in no way directs a finding that she is able to engage in light work"); *Cline v. Sullivan*, 939 F.2d 560, 566 (8th Cir. 1991); *Thomas v. Sullivan*, 876 F.2d 666, 669 (8th Cir. 1989). Burns tried to engage in meaningful activities in spite of his ankle problems, and in fact, stated that his mental health had deteriorated because he could no longer take part in the life he used to know. (Tr. at 459, 482-483). This is borne out by his long-term compliance with various psychiatric medications for anxiety, mood swings, and panic attacks.

Multiple doctors indicated that Burns could not do the walking or standing that is required by jobs performed at the light level. And certainly, Burns' pain, side effects from strong narcotics, and disturbed sleep could result in absences from work that would not be tolerated, according to testimony from the VE. Therefore, the Court concludes that the RFC assigned by the ALJ was not supported by substantial evidence.[6]

**IV. <u>Conclusion</u>:**

For the reasons stated above, the Court finds that the ALJ's decision is not supported by substantial evidence. The ALJ erred in his RFC determination.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision be REVERSED and the case be REMANDED for further review.

DATED this 30th day of October, 2017.

_____
UNITED STATES MAGISTRATE JUDGE

---

[6] Burns' argument that the hypothetical posed to the VE was not accurate dovetails with his RFC argument, and the Court likewise finds that the hypothetical the ALJ chose to rely upon was not supported by substantial evidence.